Call the next case, 16-10235, United States v. Rico. All right, Mr. Page. Good morning. May it please the Court? My name is Kevin Page. I represent Mr. Rico, and I work for the Federal Public Defender. A precedence report is not gospel. It is not sacred text. Unsupported claims do not become true merely because they appear in a PSR, and it is not heresy for a defendant to suggest that the PSR has not provided sufficient support for its claims. Yet here, the District Attorney's Office has gone from 362 months to 327 months to a recommendation of life imprisonment capped by statute at 40 years on the basis of conclusory, unsourced, illogical information, and because the defendant's lawyer had the audacity to question whether or not the PSR gave sufficient support and evidence that he dealt a kilogram to a co-defendant, when that kilogram didn't even affect the guidelines. Let me ask you something that's strange to me about this case. It sounds like the PSR comes out, and this was a surprise that there was all this information. I understand all your arguments that it was too vague and conclusory, but normally the defense should have access to everything in the government's file. So, for example, if this came in because of statements from the co-defendant, Godinez, you'd have the interview summary of what Godinez said. Was there not full discovery in this case? To me, there shouldn't be surprise at sentencing, and it sounds like that's what's going on here. Well, I mean, we didn't represent Mr. Ricco below. He had to retain counsel, so I can't speak to that. I assume that there was adequate discovery. I haven't heard a complaint about that. But the reason that that evidence needs to be in the PSR and it needs to be adequate, even if the defendant has the ability to access to the same information, is number one, any time he makes a factual assertion, particularly in this court, he's at risk of losing acceptance of responsibility. So the way that we protect the accuracy of the sentencing process ought to be that we have an adequately sourced basis for information in the pre-sentence report to begin with, and then only then do we shift the burden onto the defense to rebut those claims. It's also questionable whether the the government has, particularly in a case like this one, where the key enhancement doesn't depend on whether or not the defendant even, isn't a fact the defendant even knows. The key enhancement, one enhancement we challenge here, is whether the methamphetamine came in. All right, but let's talk about that, because that's one where, made the objection, then you get to the sentencing hearing and say, no, under the current case law, this is correct. I'm just preserving the way the Fifth Circuit does, says I'm preserving that argument for further review. And so that wasn't a fact-bound argument, that was a legal argument, and so you have, your client has then waived any argument that the evidence was insufficient. Rather, you're making whatever other legal argument you were making. Isn't that a fair reading of the record? I disagree, Your Honor. The, if you compare what happened in this case at sentencing to the cases cited by the government, it's clear that that was wavering, and what happened here was merely that the defense presented two arguments, one legal, one factual. There's insufficient basis for, to find that it was imported, and in any case, I argue that the defense turned out to have to know that, and then pursued only the legal one at sentencing. That's not the same as what happened, for instance, in Muskie's, where the defense said, I withdraw this. It's not a game of gotcha on the lawyers, but it is not a game of gotcha on the judge either. And judges have to do a lot of sentencing hearings, they have these big fat PSRs for those, and they need the lawyers to be honest with them about what they're claiming. So you show up at the hearing and say, or your predecessor shows up and says, on the two-level enhancement for importation, I'm only making this objection to the Fifth Circuit standard, which is a legal question, and not, oh, this thing about it being wet isn't good enough to support the idea that it's from another country. The judge is going to go with that and think, okay, well, I can't overrule, I'm a district judge, I can't overrule the Fifth Circuit further, and you can't mislead a court like that and then come and complain to us. Your Honor, I would disagree with the idea that it's misleading. Clearly, Judge McBride in this case had an opportunity to rule. He issued an order in response to the PSR saying, I tentatively find these all to be without merit, and this is so that you can, to affect your presentation before me. So in other words, he said, I already have evaluated the evidence in this case, and I think that there's adequate evidence of importation on the PSR in this case. Please take that into consideration when you consider what arguments to make in front of me. And what's the purpose, then, of the number of arguments you continued to press after that tentative ruling, like the legal issue on the importation, like the factual basis for the meth house? In other words, the tentative order, if that was a full ruling, why did you make all these, I know it wasn't you, but why did the defense lawyer make all these other arguments at the actual hearing? Because I think he hoped that some would be persuasive, and because he was afraid that he would lose acceptance for the one he had. Exactly. And so on the, it's easy enough to say, well, Your Honor, you seem to not agree with me on the meth importation, but I think there's really no evidence on that, because the fact that it's wet, I mean, it can be wet in Texas, it can be wet in Mexico, it could be wet anywhere. And that would have been good enough. It wouldn't have been disrespectful or anything like that. Just say, well, so I'll stand on, you know, my objection that I made, or I'll stand on the papers. I don't want to take the court's time unnecessarily. And then if the judge wants to engage you, he can. As well, I mean, I've certainly had the experience, the lawyers don't seem to care what I think. They keep making their hearing, you're entitled to be heard. And so I don't see that the judge cut you off, or your predecessor, I keep saying you, I'm sorry. I don't see that the judge cut defense counsel off or said, I will not entertain argument on points A, B, C, or anything like that, that would excuse what I think is an effort to mislead the court, either, if it's not intentional, then it was unintentional, but either way, I think it's, the record supports a conclusion of waiver, that there was no pursuing of this fact, and to the contrary, just said, I'm only objecting on this standard, the Fifth Circuit standard point. Well, I'll make a few points and move on about that. The first one is, assuming that would be a rational rule, I'm not sure it's the law. I mean, the law in the United States versus Martinez-Rodriguez is, the central inquiry is the specificity and clarity of the initial objection, not the defendant's persistence in seeking relief. Yeah, but this isn't a question of persistence. If you make five objections, and you show up and say, I'm standing on my objections, I just want to argue one of them, Your Honor, absolutely you haven't waived anything. We get that. You don't have to keep being persistent and really sounding passionate and making a lot of gestures. But when you come in and say, my only objection to this two-level enhancement is this thing about the Fifth Circuit standard, it's a legal objection, we're just preserving it for further review, then you have left the judge thinking, that's the only problem with that. And then you've done more than simply not be persistent. You've actually undone the prior objection. That's the concern I have, and I think that is the rule. Two other pieces of law I want to call the Court's attention about that. One is Medina on Icacio, which is cited in the briefs, in which a defendant went to court and said, or the PSR, I guess in court he said, the defendant should get eight levels for this. And then later on, this court permitted him to argue that his offense was not an aggravated with that position because he had clearly presented the argument he wanted this court to rule on, which was that it's not an aggravated felony. So the final point I want to make is if you look at Hetterzano, which is another case cited, I think, in the reply, the Court can consider also in determining preservation whether or not the defendant, there was a cost, a likely cost to the defendant for pursuing it in a way that would have made preservation clearer. And I think it's clear in this case, particularly given the third issue here where the defendant lost acceptance of responsibility for pursuing an evidentiary sufficiency argument, that there was a reasonable fear by the defendant that if he pressed the factual claim here, he could lose acceptance. And finally, I want to point to just that in general, we are supposed to indulge every presumption against waiver. So at most, we have an ambiguous record here. With the Court's permission, I'll move on to the second argument, which is whether or not the defendant dealt methamphetamine inside the house or outside the house. He gets two or other location for drug dealing, and the District Court found that he had. But its finding on that point is really based on a bald and conclusory statement in the pre-sentence report. If you look at paragraphs 21, 26, and 31, basically these portions of the pre-sentence report just say it. They don't provide any information about what the probation sources are. They just say the defendant conducted drug deals inside the house. There's no source, there's no reasoning, just a conclusion. Paragraph 43 is a little better. It says co-conspirators confirmed that he dealt inside the house, but it doesn't provide any information about who, it doesn't say under what circumstances this information came to the probation's attention or the agent's attention. It's basically a little birdie told me. And a little birdie told me is not an inherently reliable claim. I would submit to you that the controlling case on this, at least the best reasoning that might be of guidance to the Court here is Narviz Guerra. In that case, the pre-sentence was found to be harmless error, but it is clear that this Court found the PSR to be inadequate on this subject, where an enhancement was based on debriefings, interviews, and telephone recordings of co-defendants, and it wasn't narrowed any further. And that's effectively exactly what we have in paragraph 43 of the pre-sentence report, is just a statement this came from co-defendants. I submit to you that Narviz Guerra is not distinguishable, and in this case, in Narviz Guerra, this Court said that that pre-sentence report was insufficient because none of that information was appended to the PSR. We were simply taking globally sourced information, and that was inadequate. And the reason that that has to be inadequate in our justice system is, first of all, it is inadequate to defend themselves. The defense, without knowing more about the circumstances of that, can't go and find witnesses to rebut them. The defense can't even necessarily say, I've never met this person, or I've met this person, but that person wasn't in any position to observe that. The defendant himself can't even rebut that argument. And the Court doesn't have any basis, neither the District Court nor this Court, have any basis to evaluate whether or not that information is credible. So the government now will argue that it is clear from the record that the person who made that claim was Mr. Godinez, but the only information in the record that says that is the statement of a prosecutor. I mean, it's the statement of the prosecutor in its answer to the PSR, and prosecutors are fine, credible people, but the law of this Court, Ellwood in Rome, is that the unsworn statement of a government prosecutor as to a factual matter they don't have any first-hand information about isn't an inherently reliable basis. So I think if the Court … I mean, they say it's Godinez. You should have summaries of everything Godinez says. I mean, it's not all on you. I don't know why the government just doesn't give the judge the report. Here's exactly what Godinez said about this house. But that's why this is all a little artificial to me, though, because in reality, in the sentencing court, there should be more information, and I understand you're saying the problem is there wasn't, but I don't quite understand why. And I don't quite understand why once they say it's Godinez, you don't say, but Judge, I've got the Godinez report, and he never said that. But it just seems to me this shouldn't be happening. That might be so, but I think that there are a lot of good reasons that it's important that if we have a burden of proof, we need to enforce that burden of proof, and it needs to be the government or the Court that brings this information to our attention, because otherwise we really don't … the defense has their cost to the defense to contest making factual assertions. Thank you. All right. Thank you. You've saved time for rebuttal. All right. Mr. Bunch? Thank you, Your Honor. And may it please the Court, Nicholas Bunch for the United States. This case presents three relatively routine sentencing issues in a case that is handled in the same fashion across courts in the state of Texas and all the courts in the Fifth Circuit in fairly standard protocol. Except for this tentative. That's unusual. Do other judges in the Northern District do that, the tentative rulings? I apologize, Your Honor. I'm not aware of other judges in the district that do it. Judge McBride has done it on a number of occasions. Those issues have been brought before this court in various fashions, not ruled upon directly, but never in any sense objected to or any cause of concern in the cases that I've seen. We've never found it improper to make a tentative ruling as long as the counsel is allowed to come and present their argument at sentencing. That's correct, Your Honor. I'm not aware of a case. I'm not aware of anyone actually raising that as an issue either. What happened in this case, Judge Costa, you suggested perhaps there was an issue of discovery. There's nothing in the record to suggest that that's the case. There were no motions filed seeking discovery. There were no objections filed indicating there was a lack of discovery provided. And what happens in this case and in lots of cases is that the government provided information to the probation officer for purposes of preparation at the PSR. And the probation officer in this case cited her sources. Paragraph 10 of the PSR is very specific about where the information is coming from to support the conclusions that she's made in the report. It includes the factual resumes, the sworn criminal complaint that was filed in the case, investigative material, offense reports prepared by various law enforcement officers, personal interviews with the ATF agent and a Texas Department of Public Safety sergeant to clarify information in the pre-sentence report. And we rely upon probation officers to do their job. They are neutral, independent, objective third parties who come into a case after there's a conviction. They analyze whatever information is provided to them, whether by the government or by the defendant, and they reach conclusions based upon a review of that. And they make a determination as to what is reliable. And once they make a determination as to things that are reliable, they put it in their report. They're officers of the court. They take an oath just like an assistant U.S. attorney does. They have a duty of candor to the court. They identify their sources. The discovery was provided. And the defendant, he had an opportunity to object to those things, which he did. And what's important in this case is the probation officer issued an addendum to the pre-sentence report. And when issues came up about the premises or about the importation issue, the probation officer took steps to clarify the information that she had already received and stood on the enhancements that she had already applied. That's the process that was filed in this case. The defendant was given every opportunity to come in and present contrary evidence. That's this Court's case law. Simply objecting to a PSR is not enough to establish that it's wrong. The defendant has the burden at sentencing to show that a PSR is materially untrue, unreliable, inaccurate, or wrong. Yeah, but if it's insufficient, then it can't sustain the enhancement. That's certainly correct, Your Honor. I don't disagree with that. But that's not the types of objections that were being made here. The objections... So how are they supposed to object when it just makes these assertions without attributing the specific assertions to any of those officers you mentioned or any witnesses or particular co-defendants? Let's take the importation issue to start with. The statements in the PSR say that the I hear on appeal that my opposing counsel has cited articles to suggest that that conclusion may be wrong. And maybe it is. But that's the type of evidence that needs to be presented at the district court so that there can be a factual determination made by the district court judge in the first instance. That evidence could have been offered, and Judge McBride at that point could have said, you know, that raises a question in my mind as to the reliability or the accuracy of what's in the PSR. Government, what do you have to offer? This court has seen... But don't you think if it says drugs were bought on this day at the mother's house that the defense should know who bought those drugs, who said that? No question. But I don't believe there's any dispute in this case as to where those drugs were being bought and how they got there and what evidence the government has. Well, he's saying they don't know anything about who's making these statements, and the but through the AUSA's response. Well, let me respond to that because I disagree with that. There is a statement in the government's brief referring to the government's objection, response to the defendant's objections to the PSR. If the court were to look at that document, it cites back to various paragraphs of the pre-sentence report to support the conclusion that the drugs were coming through the co-defendant. This court's made clear time and time again that PSR's probation officers and district court judges can rely upon statements of a co-defendant or a co-conspirator in reaching the conclusions it makes about the reliability of the government's evidence at sentencing, and there's no difference in this particular case. What's unique about Mr. Rico's challenges to the pre-sentence report and what I think resulted in the denial of acceptance of responsibility is the way that he presented those. These were not objections to say there's a lack of evidence on this point. His objections were to affirmatively deny relevant conduct, and 3E1.1 makes very clear that a district court judge can deny acceptance of responsibility if the defendant falsely denies relevant conduct. Could he have denied an acceptance of responsibility for just saying that the drugs are wet is not evidence of importation? I'm not aware of that case, Your Honor. No. In other words, that doesn't seem to me to be denying responsibility. You can say, you know, I was dealing these drugs, however, I had no reason to think they were from Mexico or whatever, and I don't think just showing that they're wet would prove that. That doesn't seem to me to be denying responsibility for the crime. It's denying the enhancement. So I think this is a friendly question. You seem to be resisting it, but I think the point is that there's differences. If I deny that it was five kilograms, then that might be denying acceptance of responsibility versus denying the source of the drugs. Just because you're dealing in drugs doesn't mean you know where they came from. Absolutely. That's in fact the legal objection that's being made. That's the legal objection. That's the only one that was presented below at the district court. I'm referring to statements by the defendant through counsel in the objections. Quote, Rico states that he would not store any methamphetamine at his mother's house or any of his places of residence. Rico additionally denies ever seeing Godinez with any type of firearm. Rico denies storing any drugs at his mother's home. Rico would always pick up his methamphetamine and have it on his person or in his vehicle right before any transaction. Those are affirmative statements by the defendant through counsel that contradict the reliable evidence in the pre-sentence report. Those objections taken together were what caused the district court judge to deny acceptance of responsibility in this case. You said Godinez was referenced in the objections to the PSR. The objections to the PSR reference, I mean response to the objections to the PSR, reference paragraph 26 and 27, which do discuss Godinez going to the house or delivering the meth on the Laneyville Road address? Paragraphs 21, 26, and 43, Your Honor. Yeah. I'm at the record at 186 and 187. Right. So 21 establishes that Laneyville Road is the mother. 26 establishes that Godinez went there and meth was delivered to him there. 27 expands a little bit on that. And then you said 41? 43, Your Honor. 43. And so then that's... Co-conspirators confirm the defendant's... Right. The Laneyville address again. So that's your response to Judge Costa about why didn't the defendant know about Godinez? He did because it's listed in here. That's correct, Your Honor. It's laid out in the pre-sentence report and also wanted to respond to the suggestion that it was solely the unverified, unsworn statement of an assistant U.S. attorney to support that particular aspect of this case. I don't believe that's accurate. Let me touch briefly on the importation issue. I agree, Judge Haynes, with the fact that this is not a game of gotcha with the district court judge. It's certainly also not a game of gotcha with respect to the assistant United States attorney who was handling this case. I think I touched on this already, but just to say it again, the importation issue maybe simply because it's wet or has a high purity isn't sufficient to show that it came from Mexico, maybe. But that factual question was never presented below and there was nothing presented to the district court judge to require him to resolve that dispute. This court has had cases, Cardenas is one that comes to mind, where the importation issue is disputed and the government can put on evidence through an agent's testimony, for instance, who can get on the stand and say, based on my training and experience, my time in law enforcement, I know that high purity methamphetamine... Well, let me ask this then. I mean, were you all ready to put on that evidence? It just didn't because of the waiver? I don't believe there's anything in the record to support, to answer that question, Your Honor. Okay. Because it seems like somewhat fortuitous for you, if you will, that at the actual sentencing they back off for an objection that they had already made. And so if they had said, Your Honor, there is just zero evidence this came from Mexico. This stuff about being wet, I mean, Texas has rain too or whatever. I'm joking. But could just say that doesn't prove anything because it could come from Mexico, but it could also come from somewhere in the United States. All right. So then at that point, what would you all have done? Presumably, at that point, the government would have put on the case agent, one of the two individuals that provided information to the promotion officer to testify regarding their training, their knowledge and experience. But they didn't have to because of the concession. And so then that's why... That's why we make the waiver argument, Your Honor. Getting back to a point Judge Costa made on a different subject, which is, it seems a little artificial, because an agent could have come in and explained why this, why they believe this to be from Mexico. And then there would have been some evidence to support it. It's a preponderance of the evidence finding, doesn't require the typical strictness of a criminal trial. So that's absolutely right, Your Honor. The defendants could have put on the case agent if they had some basis to challenge the case agent's conclusion as to why wet methamphetamine is more likely to come from Mexico, why high purity methamphetamine is more likely to come from Mexico. There was no disputed factual issue at the sentencing hearing, and it's now being second-guessed here at appeal, and second-guessing the district court judge and the government from having its opportunity to present that evidence. So let me ask you this. If we were to find no waiver and conclude that he has a point, would the proper remedy be to vacate and remand for a new sentencing where you could put on that evidence, or would we have to find insufficiency in the traditional sense and remand for a resentencing where you don't get to put on any evidence of that? I think this court could affirm, based on the record it has before it, even if the court finds that it wasn't waived, because then the question is... That's another, that's a third option, but I'm saying if we can, if we determine that it was a valid objection that wasn't waived, then what do we do? Then the question is going to be whether it was harmless. And there is evidence in the record that... I think our question, though, is if we send it back, can you prove it up, or would we just be saying it can't be proven on this basis, it's done, take the points off and resentence without... Do you get another chance to put on the evidence, or do you not? All other things going against you on appeal. I would think the government would have the chance to present that evidence on remand. I thought you might think that, but didn't seem to want to tell me that. Candidly, Judge, I hadn't thought through that question, because I think... Well, yes, and I know lawyers often don't spend enough time on the prayer for relief about the what if I don't win everything, like what might the court do, and it's helpful if you have thoughts on that, because otherwise we're going to do what we understand to be correct under the law without any assistance from what the lawyers think. Understood, Your Honor, and I think that the question, though, is if it's not waived, did the district court clearly err in applying the two-level enhancement, and on the facts in the pre-sentence report that are unrebutted, that were unchallenged below, the pre-sentence report establishes that the methamphetamine came from Mexico. It says it. It establishes that it is wet, that wet methamphetamine is typically brought in from Mexico as a way to just seal it. But it's not exclusively, right? It's not like there's some form of marijuana that can only grow in the fields of so-and-so that's only in Mexico. I mean, something like that, that would be that specific, where you say there's no way it could have come from the U.S. Certainly not. I'm not making that argument, Your Honor, but the high purity level is something that goes to the district court's conclusion about where this particular methamphetamine came, and on a preponderance standard, the factual burden on a sentencing issue and the clear error standard, I think that the government would prevail and there would be no need to send it back to the district court judge. Unless the Court has other questions, I will reserve the balance of my time. Thank you. Okay. Thank you. If it pleases the Court, there's five things I'd like to say, which might be ambitious, but... Say them fast. All right. So first, I want to call the Court's attention, I believe, to 28 U.S.C. 2106, which says that basically the Court can do whatever it wants on remand. It can... Well, it's nice to have a lawyer finally concede that. Yeah. That the Court on instructions on remand can remand with any such instructions as it wishes and there are great equitable considerations in this case against giving the government a second bite at the apple. There were clear, in defense's view, evidentiary sufficiency objections to each of the enhancements and if this Court is serious, as it says often in its plain error jurisprudence, that there need to be incentives for the parties to make their best case to the district court, then it shouldn't have that opportunity. Second... Yes, but you see, if you win, it doesn't mean your client walks out. If you win, it means you have a resentencing and the question is just what happens at this resentencing. So... Right, but I mean, there's still... And if your predecessor in interest is the one that misled us into this ditch and we let you out of the ditch, it doesn't seem like you can complain if, well, okay, we just have a do-over and start where we would have been if everybody knew this objection was still being made. If the Court believes that preservation is complicated by that, then that's an equitable consideration it can weigh. It shouldn't weigh that position on the second issue about the maintenance issue. That's fairly clear. Second of all, I want to point out what I think is some tension or irony in the government first saying that an objection is not enough to put the government to its burden of proof or the PSR to its burden of proof of showing the facts, the factual basis for its conclusions and then saying that when the defense makes affirmative claims, when it actually attempts to tell the Court what the facts are, that it should lose acceptance of responsibility for those facts. Yeah, but it depends on what that it is because acceptance... I agree that it's not inconsistent with acceptance responsibility to say the drugs didn't come from Mexico. Okay? I don't think that has anything to do with the actual crime other than in the enhancement context. But if you start saying, well, I'm not really sure there's evidence that I was dealing drugs at my mother's house, and that's part of the relevant conduct here, then you can start to say that gets into denying acceptance responsibility. It becomes a little bit of a fuzzy line and fuzzy goes to the district court. Right. So that brings me to my third point, I guess I'm making good time, that the defendant did deny some relevant conduct in this case. But that's not why the court took acceptance away. If you look at the particular objection that the court took acceptance away from, it is an evidentiary sufficiency claim. It is. Mr. Godinez says that the 929 grams came from the defendant, but there's not sufficient evidence of that to believe him on that because A, he's a co-conspirator, and B, he has other sources. There is no affirmative claim, I did not deal that 929. And that's why the district court took away acceptance of responsibility in this case. So the district court crossed the line in this case in taking away acceptance for an evidentiary responsibility. And I would submit that the court, I would ask the court to keep that in mind when it considers the preservation issue, that we do have questions here where the same kind of objection that the defendant wanted to make about importation here cost acceptance on another issue. My fourth point I want to make is that the PSR, that the government is, the paragraphs of the PSR do say that Godinez received the drugs from the house, but nothing in the PSR says Godinez is the source of the information that he received those drugs from. It just says that those were co-defendants. It doesn't say Godinez told us that. Only the AUSA says that, which means this could be downstream hearsay that maybe originated with Godinez or originated with the defendant, or the defendant's brother. It could be the defendant's brother, for all we know in the PSR. So... Pretty technical. Well, I mean, I think that if you look at the... I mean, it's a little different from a little bird when you actually identify the person. You're just saying, well, they didn't say he said that he said he did, you know. I think that's... Really, we're in the same situation as Narviz Guerra. I think that's the instructive authority on this, is that it says... There's a case where we had a global sourcing to co-defendants in general, and that was found to be inadequate. Finally, I want to argue, I want to point out that in Pecino-Cardines, it says that the district court, we can't switch, the government can't switch its basis for losing acceptance on appeal, that we're bound to the district court's finding of why the defendant should lose acceptance. And I don't think that we can always just call the case agent to fix all these problems because of two key regulations and because of this court's precedent that say the defendant doesn't have the right to even put on witnesses unless they can show what they're used for. Thank you. Okay. Appreciate it. You managed to get through your thought. All right.